(Huron Co., O., Court of Common Pleas.)

## HATTIE S. WATERHOUSE v. EUGENE R. WATERHOUSE.

---

(1). The fact that an action is erroneously numbered on the appearance docket and described as so numbered in a published notice for constructive service on a non-resident defendant does not invalidate the notice, and constructive service thereon will not for that reason be set aside.

(2). The description of the residence of a defendant as St. Louis, Missouri, is sufficient in a notice for constructive service by publication without the addition of street address, it not appearing that the plaintiff has more definite knowledge of defendant's residence, and the defend-

ant's name in the notice being one so uncommon that it may reasonably be assumed that postoffice officials in the city named can readily find such defendant and deliver the newspaper containing such notice, when sent pursuant to the statute.

(3). A levy of attachment was made on property of a non-resident defendant April 5, 1898, and on April 26, 1898, the attachment statute was amended, and non-residence of a debtor as a ground of attachment omitted from the statute.

Query,—whether such omission was a mere inadvertence of the legislature and whether, if so, the inadvertence can be cured by judicial construction; but held, that in any event the pending action and lien of the attachment are not affected by the statutory amendment.

(4). A judgment for alimony in gross, rendered in a court of Missouri having jurisdiction of the subject matter and the parties, may be sued upon in this state, and a proceeding in attachment to enforce the collection of such judgment sustained.

————

Decision on motion to set aside service.

WILDMAN, J.

The plaintiff in this action in her petition alleges the recovery by her of a judgment against the defendant for alimony, in a gross sum, in the circuit court of the city of St. Louis, Missouri. She alleges the jurisdiction of that court over subject matter and parties, and seeks to subject by attachment and garnishment in this court certain interests of the defendant, the ground of the attachment being the defendant's non-residence in the state.

The case comes before me on the motion of the defendant, who appears for the purpose of the motion only, to set aside the service by publication on him, for the reason, as averred, that the same is without authority of law and void.

Several points are urged in support of the motion, some of them touching claimed defects in the published notice, and others attacking the right of the plaintiff to obtain service by publication at all, or to maintain an attachment, by reason of the defendant's non-residence. The defendant further urges that this court has no jurisdiction to enforce by attachment the judgment of a court of another state for alimony.

Possibly not all these contentions

are properly raised by a motion to set aside the constructive service, but as counsel have argued the several questions, and intimation was made that the motion presented may be followed, if necessary, by one to discharge the attachment, I will consider the questions discussed.

As to the form of the published notice I do not deem the imperfections to which my attention has been called so substantial or prejudicial as to warrant setting aside the service.

By an apparent inadvertance, the case when originally entered on the appearance docket was designated as number 6110 instead of by its proper number of 5110, and was described in the notice as having the former number. This description of the pending action was not required by the statute, and it is difficult to see wherein the defendant can be prejudiced by the mistake. The title of the case and the statement of the substance of the petition would enable him or his attorney readily to find the entry on the docket and the petition on the files. The notice correctly described the case as it was in fact, although erroneously numbered on the docket, and the numbering, correct or incorrect, would in no way affect his time for answer, if he cared to answer. As the sole object of the notice is to apprise the defendant of the pendency and nature of the suit and what interest of his is sought to be affected, if it contains the statutory requisites to that end, it is sufficient. See Gary et al. v. May et al, 16 Ohio, 66, 79; Winemiller v. Laughlin et al, 51 Ohio St., 428-9; and 16 Am. & Eng. Encyc. of Law, 792, 815.

The defendant complains that the notice is further defective in not describing with sufficient definiteness the residence of the defendant, so that a copy of the newspaper containing the notice could be sent through the mails with some certainty of reaching him.

The defendant's name is given in full in the notice, and he is said to reside "at St. Louis, Missouri," but no street or number is mentioned. It does not appear whether or not the

plaintiff had any more definite information as to the defendant's whereabouts. I have made some search, but have been unable to find any decisive authority as to the sufficiency of such a notice in a case such as the one at bar. As to the somewhat analogous requirement of notice sent by mail to charge the endorser of commercial paper, there has been some adjudication, which, in the absence of more pertinent authority I am disposed to apply and follow. Thus, in True v. Collins, 3 Allen (Mass.)., 438, 440, it was held sufficient to address such a notice to a party by his full name, at a town or city named, (e. g. Boston), without any street address; and in Benedict v. Rose, 16 S. Car., 629, a notice addressed to W. E. Rose, Columbia, S. C., was held sufficient.

Under all the circumstances disclosed, in the light of the foregoing decisions, and considering the fact that the defendant's name is one so uncommon as to enable him to be probably found and identified with readiness by any postmaster or messenger taking the trouble to examine the city directory, I think that the address given in the published notice is not so indefinite as to justify setting aside the service for that reason.

Another question discussed by counsel is hardly raised by the record of the case, so far as I have been able to ascertain by an examination of the files. It is assumed by counsel in argument that this attachment seeks to subject some interest or interests of the defendant in an estate left by his father, not yet administered and not ready for distribution, and it is earnestly urged that such interests cannot be attached or process of garnishment legally issued against the heirs of the decedent.

I need not stop to consider the case of Bentley & Sons v. Strathers (District Court, Trumbull Co.), 5 W. L. Bull., 288, cited in support of this argument. It suffices to say that the garnishees who are named in this proceeding are nowhere described as heirs or representatives of a decedent, nor does it appear that the lands on which the attachment has been levied are any part of an unadministered estate.

The recent amendment of our attachment statute (93 O. L., 316, 321), and the omission in the section as amended of non residence in the state as one of the specified grounds of attachment, is made the basis of a further contention here that this service ought to be set aside, inasmuch as the facts stated in the affidavit do not, as it is claimed, authorize either an attachment or constructive service.

It may be true as suggested in Mr. Kerr's recent work on the attachment law of Ohio, that the omission from the amending statute of this time-honored ground of attachment was a mere inadvertence on the part of the legislature; it must still remain a matter of grave doubt whether the courts would be justified in assuming that the legislature blundered, and in attempting by judicial law making to correct the mistake and supply the omission.

There may, however, be an easier and more satisfactory way of disposing of the question, so far as it affects this case.

The act took effect by its terms April 26, 1898. This action was then pending. Not only had the petition been filed and service by publication begun, but the attachment had been actually levied on land of the defendant as early as the 5th of the same month. The lien of an attachment dates from the time of the levy, and it may well be questioned whether the plaintiff did not thereby acquire a vested right which the legislature had no constitutional power to disturb. Article II, section 28, of the constitution provides that "the general assembly shall have no power to pass retroactive laws."

Construing this section, the supreme court has said.

"The words, 'retrospective' and 'retroactive', as applied to laws, seem to be synonymous. Justice Story thus defines a retrospective law: 'Upon principle, every statute which takes away or impairs vested rights, acquired under existing laws, * * * must be deemed retrospective.' " Rairden v. Holden, 15 Ohio St., 207,.

210, and see Sturges v. Carter 114 U. S. Sup. Ct., 512.

Reluctant to invalidate a legislative enactment, the courts have always inclined to give, if possible, such construction to its terms as will preserve its validity under the constitution. And in Bernier v. Becker, 37 Ohio St., 72, 74, the supreme court approved he rule that "a statute should have a prospective operation only, unless its terms show clearly a legislative intention that it should operate retrospectively"; although, in that case the question of constitutional inhibition against retroactive legislation does not seem to have been raised. Again, in Allen v. Russell, 39 Ohio St., 339, Judge Okey asserts the principle that "even in cases where such constitutional inhibition does not apply, if it be doubtful whether it was intended that the new act should operate retrospectively, the doubt should be resolved against such operation."

It is urged by defendant's counsel, however, that even if the statute under consideration cannot affect vested rights, still no such right has vested in the plaintiff as will prevent the operation of the new statute in its application to the present proceeding.

But it is to be remembered that this statute is an amendatory one, and for such, a rule of construction is given in section 79, of the Revised Statutes. It is there enacted:

"When the repeal or amendment relates to the remedy, it shall not affect pending actions, prosecutions or proceedings, unless so expressed."

See also in the same connection the cases of Arrowsmith v. Hamering, 39 Ohio St., 576; and State ex rel. v. Rabbitts, 46 Ohio St., 178.

The amendatory statute provides (93 O. L., 321), that it shall not extend to or affect any existing debt, contract, note, or judgment; but it does not provide that it shall affect pending actions or proceedings. Without such latter provision, it can have no application to the present action and attachment proceeding which were pending when the act took effect.

There remains to be considered only the question raised by counsel as to whether a judgment for alimony rendered in a court of one state, can be made the basis of an action and proceeding for attachment in a court of a sister state to enforce the judgment. It is forcibly urged that in a divorce case wherein a judgment for alimon is given, there remains a continuing jurisdiction in the court rendering such judgment, so that the judgment may be subsequently modified, perhaps reduced, in amount, by such court. Cases are cited clearly showing that for some purposes the jurisdiction of a court in a divorce case is a continuing one. The principle has been asserted in contentions regarding the custody of children, and as to the payment of alimony awarded and made payable in installments; (as in Olney v. Watts, 43 Ohio St., 499, approved in Pretzinger v. Pretzinger, 45 Ohio St., 463); although rarely, if at all, I believe, as to alimony payable in gross, under decrees of divorce a vinculo. See 1 Am. and Eng. Enc. of Law, 1st Ed'n., 481.

But assuming that any judgment for alimony is subject to modification in the court rendering it, does it follow that it is not, before such modification, a finality, so as to be subject to review in the appellate courts, or to enforcement by proper procedure in any court of another state of general jurisdiction?

So far as Ohio is concerned, a judgment for alimony is, in section 5706, of the Revised Statutes, treated as final and subject to appeal; and in Petersine v. Thomas, 28 Ohio St., 596, a judgment for an amount of alimony in gross, agreed upon by the parties, was held to be final and a bar to a new action for additional alimony, "when the reasons for such additional allowance existed or might have been provided for in such final judgment, and when it is not sought to impeach such final judgment."

By the general practice in the different states, most final judgments and decrees are susceptible of modification or reversal for error under varying statutory procedure, in the courts where rendered or in appellate courts; but the fact that a judgment may be

so modified or even set aside entirely, is, in the absence of some form of supersedeas, no bar to its enforcement in the same court or suit upon it in another, even before the expiration of the legal period of limitation for proceedings in error. The liability to modification of a judgment does not seem, in itself, then, to stand in the way of its enforcement, though an actual modification might undoubtedly be set up by a defendant in a suit upon a judgment or in any other legal proceeding looking to its collection.

Notwithstanding this general rule, the courts of some of the states have seemed to treat judgments for alimony as peculiar, and not subject to precisely the same methods of enforcement as pertain to other judgments for money. In Hansford v. VanAuken, Adm'r., 79 Ind., 302, a decree awarding alimony was held to be "a judgment upon which an action may be maintained in the same court in which it was rendered."

That case did not involve the further holding that such action might not be maintained in any other court of competent jurisdiction; but in Guenther v. Jacobs, 44 Wisconsin, 354, 356, it was said that "the cases, with rare exceptions, recognize the exclusive jurisdiction of the court granting a divorce, to enforce its own judgment for alimony." The action in which this rule was enunciated was one instituted in one Wisconsin court upon a judgment for alimony rendered in another court of the same state.

A case of the same character is that of Allen v. Allen, 100 Mass., 373; but in that case, the court in their reasoning draw a distinction between suits upon domestic judgments and suits upon those of other states. While adopting, as to domestic judgments, the rule of the Wisconsin court which I have quoted, they expressly disclaim any application of the rule to judgments of other states, in the following words p. (376): "We do not mean to intimate that a decree for alimony rendered in another state may not be enforced in this commonwealth. * * * We do decide, however, that this court is the only one in this state

competent to enforce payment of alimony decreed by itself."

The reason for this distinction, which seems to discriminate in favor of judgments rendered outside of the state as against domestic ones, may be found in art. IV, sec. 1, of the federal constitution: "Full faith and credit shall be given in each state to the public acts, records and judicial proceedings of every other state." While each state may regulate its internal affairs and give to its own judicial proceedings such weight in its own courts as it may deem fit, such freedom is not left to the state courts in their treatment of the judgments of courts of sister states.

The supreme court of the United States in the case of Barber v. Barber, 21 How. (U. S.,) 582, (Book 16 L. C. P Co., 226), approved in Cheever v. Wilson, 9 Wall, 108, 124, (Book 19, L. C. P. Co., 604, 608) directly apply the constitutional provision referred to, to divorce and alimony proceedings, in the language following:

"The parties to a cause for a divorce and for alimony are bound by a decree for both, which has been given by a state court having jurisdiction of the subject matter and over the parties.

"Such a judgment or decree, rendered in any state of the United States, the court having jurisdiction, will be carried into judgment in any other state, to have there the same binding force that it has in the state in which it was originally given."

Referring to this federal decision, the supreme court of Massachusetts, in the case already cited (Allen v. Allen et al, 100 Mass., 373, 374), say:

"A decree for alimony is said by the supreme court of the United States to become 'a judicial debt of record against the husband', and that a suit may be brought in another jurisdiction to 'carry the decree into a judgment there, with the same effect that it has in the state in which the decree was given.'

Accordingly, a bill in equity was maintained in the circuit court for the district of Wisconsin to enforce a decree for alimony made in New York upon a divorce from bed and board * *.

There are obiter dicta to the effect that no action lies on such a decree beyond the jurisdiction in which it is made. Battey v. Holbrook, 11 Gray, 212; Barber v. Barber, 1 Chandler, 280. But the clear preponderance of authority accords with the decision of the highest federal tribunal."

I have already cited a decision in 79 Ind., 302, holding a decree awarding alimony to be "a judgment upon which an action may be maintained in the same court" where rendered.

In Blecknell v. Blecknell, 110 Ind., 42, (10 N. E., 414) the same court extended the doctrine and held a judgment for alimony to be a debt of record, on which suit may be brought in the same, "or any other court of competent jurisdiction."

So in the case of Bullock v. Bullock, (N. Y. Sup.) 31 Atlantic, 1024, it was held:

"An action at law may be maintained in this state (New Jersey) upon a decree for alimony made in New York if the New York court had jurisdiction of the subject matter and of the person of the defendant."

Precisely the same rule was enunciated in Brisbane v. Dobson, 50 Mo. App., 170 by a court of Missouri, the state in which the judgment herein sued on was rendered. The court in the case cited held:

"An action at law can be maintained in this state on a decree for alimony rendered in a court of competent jurisdiction in another state."

In the recent case of Dow v. Blake, 148 Ill., 76, Magruder, J., speaking for the court, says:

"It is urged that an action will not lie in one state upon a judgment for alimony rendered in another state * * * . But we see no reason why a final decree which directs the payment of a specific sum of money should not have the same force and effect as a judgment at law * * *. Where such a final decree is rendered in a court of competent jurisdiction in one state, the constitution of the United States requires that full faith and credit be given to it in every other state. It makes no difference, so far as the duty of the courts in another

state to enforce it is concerned, that the specific sum required to be paid by such final decree is for alimony."

Some of these cases, with others not so directly in point, are collated in foot notes on pages 416 and 433 of 1 Am & Eng. Enc. of Pl. & Practice, to which work reference may be made for further discussion of the subject.

From the examination which I have been able to make, I am satisfied that upon both principle and authority, an action will lie in one state to obtain a judgment for money upon an original judgment for alimony rendered by a court of another state having jurisdiction of the subject matter and the parties.

It follows as a corollary that an attachment may issue and constructive service by publication may be had in such suit.

I am unable to see any valid objection to the service which has been made in this case, and the motion to set the service aside will be overruled.

McKnight & Tomas, for Plaintiff
Stewart & Rowley, for Defendant.